P.C

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS** RECEIVED

LaVonnya C Harell )
)
_____ )
)
Plaintiff(s), )
)
v. Kemper/AKA )
Merastae )
)
)
Defendant(s). )

APR 21 2026 PJJ

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

Case Number: _____

1:26-cv-04480
Judge April M. Perry
Magistrate Judge Gabriel A. Fuentes
RANDOM / Cat. 2

## COMPLAINT OF EMPLOYMENT DISCRIMINATION

1. This is an action for employment discrimination.

2. The plaintiff is La Vonnya C Harrell of the county of Cook in the state of ILLINOIS.

3. The defendant is Kemper/MERASTAR INS COMPANY, whose street address is 200 E RANDOLPH, (city) CHICAGO (county) COOK (state) STATE (ZIP) 60601
(Defendant's telephone number) (312) – 661-4600

4. The plaintiff sought employment or was employed by the defendant at (street address) 200 E RANDOLPH (city) CHICAGO (county) COOK (state) IL (ZIP code) 60601

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

5. The plaintiff [*check one box*]

(a) ☐ was denied employment by the defendant.

(b) ☐ was hired and is still employed by the defendant.

(c) ☑ was employed but is no longer employed by the defendant.

6. The defendant discriminated against the plaintiff on or about, or beginning on or about, (month)___July___, (day)_22_, (year)_2025_.

7.1 *(Choose paragraph 7.1 or 7.2, do not complete both.)*

(a) The defendant is not a federal governmental agency, and the plaintiff [*check one box*] ☑*has* ☐*has not* filed a charge or charges against the defendant

asserting the acts of discrimination indicated in this complaint with any of the

following government agencies:

(i) ☑ the United States Equal Employment Opportunity Commission, on or about

(month)___0 1___ (day)_27_ (year)_2026_.

(ii) ☐ the Illinois Department of Human Rights, on or about

(month)_____ (day)_____ (year)_____.

(b) If charges *were* filed with an agency indicated above, a copy of the charge is

attached. ☑ Yes, ☐ No, **but plaintiff will file a copy of the charge within 14 days**.

It is the policy of both the Equal Employment Opportunity Commission and the Illinois

Department of Human Rights to cross-file with the other agency all charges received. The

plaintiff has no reason to believe that this policy was not followed in this case.

7.2 The defendant is a federal governmental agency, and

(a) the plaintiff previously filed a Complaint of Employment Discrimination with the

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

2

[If you need additional space for ANY section. please attach an additional sheet and reference that section.]

defendant asserting the acts of discrimination indicated in this court complaint.

☐ Yes (month)_____ (day)_____ (year) _____

☐ No, did not file Complaint of Employment Discrimination

(b)    The plaintiff received a Final Agency Decision on (month)_____

(day) _____ (year) _____.

(c)    Attached is a copy of the

(i) Complaint of Employment Discrimination,

☐ Yes    ☐ No, but a copy will be filed within 14 days.

(ii) Final Agency Decision

☐ Yes    ☐ N0, but a copy will be filed within 14 days.

8.    *(Complete paragraph 8 only if defendant is not a federal governmental agency.)*

(a) ☐    the United States Equal Employment Opportunity Commission has not

issued a *Notice of Right to Sue.*

(b) ☑    the United States Equal Employment Opportunity Commission has issued

a *Notice of Right to Sue*, which was received by the plaintiff on

(month)___*01*___ (day)___*27*___ (year)___*2026*___ a copy of which

*Notice* is attached to this complaint.

9.    The defendant discriminated against the plaintiff because of the plaintiff's [*check only*

*those that apply*]:

(a) ☐ Age (Age Discrimination Employment Act).

(b) ☐ Color (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

3

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

(c) ☑ Disability (Americans with Disabilities Act or Rehabilitation Act)

(d) ☐ National Origin (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(e) ☐ Race (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(f) ☐ Religion (Title VII of the Civil Rights Act of 1964)

(g) ☐ Sex (Title VII of the Civil Rights Act of 1964)

10. If the defendant is a state, county, municipal (city, town or village) or other local governmental agency, plaintiff further alleges discrimination on the basis of race, color, or national origin (42 U.S.C. § 1983).

11. Jurisdiction over the statutory violation alleged is conferred as follows: for Title VII claims by 28 U.S.C.§1331, 28 U.S.C.§1343(a)(3), and 42 U.S.C.§2000e-5(f)(3); for 42 U.S.C.§1981 and §1983 by 42 U.S.C.§1988; for the A.D.E.A. by 42 U.S.C.§12117; for the Rehabilitation Act, 29 U.S.C. § 791.

12. The defendant [*check only those that apply*]
(a) ☐ failed to hire the plaintiff.

(b) ☐ terminated the plaintiff's employment.

(c) ☐ failed to promote the plaintiff.

(d) ☐ failed to reasonably accommodate the plaintiff's religion.

(e) ☑ failed to reasonably accommodate the plaintiff's disabilities.

(f) ☐ failed to stop harassment;

(g) ☐ retaliated against the plaintiff because the plaintiff did something to assert rights protected by the laws identified in paragraphs 9 and 10 above;

(h) ☑ other (specify): <u>DISABILITY BESRIMINATON AND RSTALIATON</u>

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

4

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

UNDER THE ADA.

13. The facts supporting the plaintiff's claim of discrimination are as follows:

I am an individual with a disability and Defendant was aware of my condition. On June 18, 2025, I request Reasonab accommodations for intermittent work from home during extreme weather, see attache complaint for full answer

14. [*AGE DISCRIMINATION ONLY*] Defendant knowingly, intentionally, and willfully discriminated against the plaintiff.

15. The plaintiff demands that the case be tried by a jury. ☑ Yes ☐ No

16. THEREFORE, the plaintiff asks that the court grant the following relief to the plaintiff [*check only those that apply*]

(a) ☐ Direct the defendant to hire the plaintiff.

(b) ☐ Direct the defendant to re-employ the plaintiff.

(c) ☐ Direct the defendant to promote the plaintiff.

(d) ☐ Direct the defendant to reasonably accommodate the plaintiff's religion.

(e) ☐ Direct the defendant to reasonably accommodate the plaintiff's disabilities.

(f) ☐ Direct the defendant to (specify): _____

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

_____

_____

_____

(g) ☑ If available, grant the plaintiff appropriate injunctive relief, lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees.

(h) ☑ Grant such other relief as the Court may find appropriate.

_____
(Plaintiff's signature)

Lavonnya C. Harrell
(Plaintiff's name)

700 N BRUCE LANE
(Plaintiff's street address)

(City) GLENWOOD (State) IL (ZIP) 60425

(Plaintiff's telephone number) (773) – 519-9387

Date: 4/20/2026

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

Section 13.

I am an individual with a disability, and Defendant was aware of my condition. On June 18, 2025, I requested a reasonable accommodation for intermittent work from home during extreme weather. Defendant delayed responding for several weeks and denied my request on July 22, 2025, stating that because I could perform the essential functions of my job, the request was not covered under the ADA. This reflects an incorrect standard. My position was capable of being performed remotely, I was hired remotely, and other similarly situated employees were permitted to work remotely, from other states with the last one moving from Illinois and turning remote in another state.. Defendant emphasized in-office collaboration as an essential function, although it was not included in my job description and was not applied consistently. Defendant later approved a modified accommodation only after repeated follow-ups, imposing limitations not aligned with my request. Shortly thereafter, I was terminated as part of a reduction in force. These actions constitute discrimination based on disability and failure to provide a reasonable accommodation.

EEOC No. 440-2025-10280 | FEPA No.

# CHARGE OF DISCRIMINATION

Form 5 (06/24)

This form is affected by the Privacy Act of 1974.
See attached Privacy Act Statement and other information before completing this form.

| CHARGE PRESENTED TO: | AGENCY CHARGE NO. |
|---|---|
| EEOC | 440-2025-10280 |
| Illinois Department Of Human Rights | |

---

Name *(indicate Mr., Ms., Mrs., Miss, Dr., Hon., Rev.)*: La Vonnya C. Harrell

Phone No.: 773-519-9387

Year of Birth: 1971

Mailing Address: 700 N Bruce LN

GLENWOOD, IL 60425

---

Named below is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency that I believe discriminated against me or others.

Name: Kemper Corporation

No. Employees, Members: 501+ Employees

Phone No.: (800) 214-3553

Mailing Address: 200 E RANDOLPH ST FL 33

CHICAGO, IL 60601, UNITED STATES OF AMERICA

Name:

No. Employees, Members:

Phone No.:

Mailing Address:

---

DISCRIMINATION BASED ON:

Disability, Retaliation

---

DATE(S) DISCRIMINATION TOOK PLACE

Earliest: 07/22/2025

Latest: 10/22/2025

---

THE PARTICULARS ARE:

I began employment with Respondent on or about October 3, 2022. My last position was Sr. Financial Analyst II. Respondent was aware of my disability and need for a reasonable accommodation. My reasonable accommodation request was delayed, denied and then granted.

I believe I have been discriminated against because of my disability and in retaliation for engaging in protected activity, in violation of the Americans with Disabilities Act of 1990, as amended.

---

EEOC Form 5 (06/24)

Page 1 of 3

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct, and that I have read each page of this form.

Digitally Signed By: La Vonnya C. Harrell
01/27/2026
_____
**Charging Party Signature & Date**

If a state or local Fair Employment Practices Agency (FEPA) requires notarization, you may need to sign the charge in the presence of a notary. If so, please do so here.

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information, and belief.

_____
**Notarized Signature of Charging Party**

Subscribed and sworn to before me this date:

**Signature of Notary**_____
**Printed Name** _____

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

Chicago District Office
230 S Dearborn Street
Chicago, IL 60604
(800) 669-4000
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 01/28/2026

**To:** La Vonnya C. Harrell
700 N Bruce LN
GLENWOOD, IL 60425
Charge No: 440-2025-10280

EEOC Representative and email:   KARA MITCHELL
INVESTIGATOR
KARA.MITCHELL@EEOC.GOV

### DETERMINATION AND NOTICE OF RIGHTS

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 440-2025-10280.

On behalf of the Commission,

Digitally Signed By:Amrith Kaur Aakre
01/28/2026
Amrith Kaur Aakre
District Director

EXHIBIT-C    AD A REQUST SUBMITED 6/18/205

Use this list to keep track of claim activity. The record goes back to the start of your claim. It can take about 5 business days for us to review any paperwork that comes in, so don't worry if you don't hear from us right away. We'll contact you as needed once we've had a chance to review. In the meantime, you can check this site for real-time status updates.

| Date | Activity |
| --- | --- |
| 10/29/2025 | We Received Information |
| 10/09/2025 | We Sent a Letter |
| 07/28/2025 | We Sent a Letter |
| 07/22/2025 | We Received Information |
| 06/18/2025 | We Received Information |
| 03/21/2025 | We Received Information |
| 03/21/2025 | We Received Information |
| 03/12/2025 | We Sent a Letter |
| 03/07/2025 | We Received Information |
| 02/11/2025 | Leave Reported |
| 02/11/2025 | We Sent a Letter |

**Response By Email** (07/08/2025 05:38 PM)

Hi La Vonnya

Kemper HR Services is in receipt of your completed ADA paperwork. Your ADA Assessment form is currently under review. The team meets weekly to discuss ADA requests.

According to the document, your provider is stating that you need to work from home permanently in times of inclement weather or extreme temperatures. It also states that you are unable to walk. Are you currently using a cane, walker, or wheelchair?

Thank you.
Kemper HR Services/Lisa

## Question Reference # 250708-000082

Date Created: 07/08/2025 10:36 AM
Date Last Updated: 07/22/2025 04:21 PM
Status: Resolved

**Response By Email** (07/09/2025 01:57 PM)

Thank you for providing this additional information. Do you see any other doctor for your condition besides your primary care doctor?

Are there any other accommodation(s) we could provide that would allow you to be able to perform the essential functions of your position in the office at least a couple of days a week?

I want to be sure we are looking at the whole picture.

Thank you.

Kemper HR Services/Lisa

**Customer By Service Email** (07/09/2025 01:30 PM)

Hi Lisa,

I am able to walk; however, contrary to the answer to question number 5, I have a neuro-musculoskeletal condition that leaves me in chronic pain and sensory issues daily. So, it sometimes hurts intermittently, not only when I walk but when I bend, sleep, stand, or sit. I have a sensory issue where I can't stand for my clothes to touch me, and I wear extremely lose clothing for work. I am also hearing impaired and wear hearing aids. He didn't put any of that there.

Sometimes I use a cane, depending on how bad the day is but sometimes it hurts to use it. I can have a bad day without inclement weather. I asked for inclement days because the doctor who diagnosed me 22 years ago (and who has been my primary doctor the entire time, really gave me the blues about signing the ADA paper at all), all of sudden he wants to treat me like my condition isn't neurological and I'm just fat and need to workout (I can barely do that without a flair up). This was all he would agree to. He denied the renewal of my parking placard (telling me I didn't have a neurological issue) because he was so worried about getting in trouble, so I guess he had to deny I had anything neurological on here too.

La Vonnya Harrell
Analyst 2, Financial Systems

Kemper Corporate Services

E lharrell2@kemper.com
kemper.com

**KEMPER**

For information concerning our privacy practices and your privacy rights, please see our *privacy disclosures*.

CONFIDENTIALITY NOTICE: This communication may contain confidential information intended only for the addressee(s). If you received this communication in error, please notify the sender and delete it from your system.

CONFIDENTIALITY NOTICE: This communication may contain confidential information intended only for the addressee(s). If you received this communication in error, please notify the sender and delete it from your system.

**From:** Kemper HR Services <kemper_hr_services@mailac.custhelp.com>
**Sent:** Wednesday, July 9, 2025 1:57 PM
**To:** Harrell, La Vonnya <lharrell2@kemper.com>
**Subject:** Harrell, La Vonnya - ADA Pending [Incident: 250708-000082]

Customer By Service Email (07/09/2025 04:02 PM)

Unfortunately, I only see one other doctor (that my primary sent me to), yearly, for a nerve block to mitigate some pain. Currently I do not see anyone else consistently, unless another symptom appears, because there is no definitive treatment nor cure.

I am not asking for an accommodation to help me perform while in the office. I've been good at mitigating my own comfort while I am there. I can perform the essential functions of my job. The main thing I need is my hands, which is the least affected part of me. However, to meet the minimum 3 days required, **sometimes I suffer greatly commuting** to work. This is not an everyday occurrence. However, since I live 29 miles away from the office, am asking for the ability to work from home on days when I am not able to drive a hour and 15 minutes or more, in rush hour traffic, or even walk to or from the Metra station (especially in Rain/snow, extreme heat, and extreme cold which are the worse days but not always the aggravators). Sometimes it is random. I've been coming in to work through everything, and it is taking a toll on me.

Note: I made sure to inform my management of my condition when I interviewed, but we were still in COVID at the time, so it was easier.

La Vonnya Harrell
Analyst 2, Financial Systems

**Kemper Corporate Services**

E lharrell2@kemper.com
kemper.com

# KEMPER

For information concerning our privacy practices and your privacy rights, please see our *privacy disclosures.*

CONFIDENTIALITY NOTICE: This communication may contain confidential information intended only for the addressee(s). If you received this communication in error, please notify the sender and delete it from your system.

*EXHIBIT-E DENIAL E-MAIL 7/22/2025*
*ISSUED VIA HARTFORD 7/28/2025*

CONFIDENTIALITY NOTICE: This communication may contain
confidential information intended only for the addressee(s). If you received
this communication in error, please notify the sender and delete it from your
system.

**From:** Kemper HR Services <kemper_hr_services@mailac.custhelp.com>
**Sent:** Tuesday, July 22, 2025 4:21 PM
**To:** Harrell, La Vonnya <lharrell2@kemper.com>
**Subject:** Harrell, La Vonnya - ADA Pending [Incident: 250708-000082]

 **KEMPER**

Recently you requested personal assistance from our on-line support center. Below is a summary of your request and our response. If this issue is not resolved to your satisfaction, you may reopen it within the next 7 days. Thank you for allowing us to be of service to you.

### Subject

**Harrell, La Vonnya - ADA Pending**

**Response By Email** (07/22/2025 04:21 PM)

Hi La Vonna

We have discussed your request at our weekly ADA meeting today.

Your request does not fall under the ADA in terms of providing an accommodation to help you perform the essential functions of your position. You, in fact, state that you can perform the essential functions of your job.

In reviewing your paperwork, your doctor does not provide enough information regarding the frequency/duration or how often these episodes of your condition may occur. While we understand that they may be random, you should be using your Remote Days when you are unable to come into the office to work. This is the purpose of those bank of days.

I would also suggest that you apply for intermittent FMLA for those days that you are unable to come into the office due to your condition. Intermittent FMLA would provide job protected time off due to a medical condition. I've attached the Hartford flyer in case you need their information again.

If you have any further questions, please let me know.

Thank you.
Kemper HR Services/Lisa

**Customer By Service Email** (07/22/2025 01:32 PM)

Hello,

I am following up on my ADA request.

La Vonnya Harrell
Analyst 2, Financial Systems

EXHIBIT D PSYCHIATRY REBUTTLE EMAIL
JULY 23, 2025

O Outlook

---

### Re: Harrell, La Vonnya - ADA Pending [Incident: 250708-000082]

---

**From** Harrell, La Vonnya <lharrell2@kemper.com>

**Date** Wed 7/23/2025 5:26 PM

**To** Kemper HR Services <kemperhrservices@kemper.com>

**Cc** Schuck, Kelly <kschuck@kemper.com>; Diedrick, Dana <ddiedrick@kemper.com>

**Bcc** LaVonnya Harrell <lavonnyah@yahoo.com>

Thank you for your response. I would like to, respectfully, provide some addition clarification regarding my request.

I have stated that I can perform the essential function of my job. As outlined in Kemper's ADA, a "Qualified individual: An individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." Under the ADA, this is a key part of the criteria for accommodation and doesn't disqualify me from receiving a reasonable accommodation.

My request specifically relates to the difficulties commuting to work due to my disability. Commuting is not considered an essential job function and, under the ADA, barriers to commuting can warrant reasonable accommodations, such as remote work, when necessary. Kemper's own ADA policy states: "If the accommodation is reasonable and will not impose an undue hardship on the Company and/or will not pose a direct threat to the health and/or safety of the individual or others, the Company will make the accommodation. Determinations will be made on a case-by-case basis, considering various factors based on an individualized assessment in each situation. The Company may also propose an alternative accommodation(s)."

While I appreciate the option of using Remote Days and intermittent FMLA, these are general benefits and not a substitution for accommodations under the ADA. The ADA doesn't not permit an employer to require the use of Remote Days nor FMLA in place of ADA. I am seeking to continue to actively work with a reasonable accommodation, not to take leave at this time.

I understand that you feel like my medical documentation lacks some information. However, my condition is intermittent (as I stated previously) and unpredictable. This limits my doctor's ability to forecast the frequency/duration of my disability. I don't even know. My doctor specifically stated, what was well within his range, my known environmental triggers: extreme cold, extreme heat, and rain, which are legitimate causes for flare-ups. Beyond those, flare-ups can be random and are difficult to predict or quantify. This shouldn't disqualify me from an accommodation.

I remain committed to working collaboratively and in good faith to find an accommodation that supports both my health and my ability to perform my role effectively. I welcome further discussion.

---

**La Vonnya Harrell**
Analyst 2, Financial Systems

**Kemper Corporate Services**

E lharrell2@kemper.com
kemper.com

**KEMPER**

EXHIBIT S    CASE CLOSED @ HARTFORD
7/28/2025

THE
HARTFORD

PO Box 14869
Lexington, KY 40512

Phone: 888-301-5615
Fax: 833-357-5153

July 28, 2025

LA VONNYA HARRELL
700 N BRUCE LANE
GLENWOOD IL - 60425

Dear La Vonnya,

We wanted to let you know that your request (claim #49646790 for an accommodation under the Americans with Disabilities Act (ADA) could not be approved.

| Accommodation Status | Date(s) Requested | Accommodation Type | Accommodation Description | Accommodation Details |
|---|---|---|---|---|
| Other - Not Accommodated | 05/12/2025 - Permanent | Stay at Work Accommodation | Work at Home - All scheduled days per week | |

Remember that The Hartford tracks ADA requests, but your employer makes the decision about which accommodations can be approved.

**What Happens Next?**
If you asked for time out of work or a change to the way you do your work, that request is not approved. You'll need to contact your employer to see whether you can make other arrangements.

If you are able to return to work to your prior position without any work restrictions or accommodations, you must have your health care provider complete the enclosed **FITNESS FOR DUTY TO RETURN FROM LEAVE CERTIFICATION** form and provide to the Kemper Leaves Team at least 48 hours prior to returning. You can email the form to the Kemper Leaves Team at leaves@kemper.com or fax it to 877-318-7657.

If you have questions or need help, visit https://abilityadvantage.thehartford.com or call us at 888-301-5615. We're here weekdays 8:00 AM to 8:00 PM ET.

Sincerely,

The Hartford

The Hartford Insurance Group, Inc., (NYSE: HIG) operates through its subsidiaries, including underwriting companies Hartford Life and Accident Insurance Company and Hartford Fire Insurance Company, under the brand name, The Hartford®, and is headquartered at One Hartford Plaza, Hartford, CT 06155. For additional details, please read The Hartford's legal notice at www.TheHartford.com. The Hartford is the administrator for certain group benefits business written by Aetna Life Insurance Company and Talcott Resolution Life Insurance Company (formerly known as Hartford Life Insurance Company). The Hartford also provides administrative and claim services for employer leave of absence programs and self-funded disability benefit plans. ©2025 The Hartford

EXHIBIT H - FOLLOW-UP EMAIL 8/7/2025
REOPENING REQUEST

Customer By Service Email

I am writing to follow up on my previous e-mail, on 7/23/2025, regarding the denial of my request for accommodations under the ADA. Since your initial e-mail denying my claim, I noticed that the claim for ADA accommodations has been marked as denied on The Hartford website. I have not received any further communication in response to my rebuttal e-mail. This lack of follow-up and transparency is both disheartening and troubling. The entire process has left me in considerable distress.

When I indicated that I welcomed further discussion, that was not merely a suggestion, it was an assertion of my right to due process under the ADA. As of today, I have not been given an opportunity to engage in the interactive process and/or formally file an appeal against this decision nor was I able to find a clear appeal process outlined on the HR site or on the Kemper ADA documentation. My assumption is that none exists.

Finalizing the decision, and completing my request on the Hartford site, without engaging me in the interactive process is not consistent with ADA requirements. The interactive process doesn't end because your group denied it. I should have been able to appeal this response and/or have an equitable dialog, regarding the matter, before it was completed.

In that equitable dialog, we could have considered alternatives if the initial request wasn't feasible. However, I was not informed why my request to work from home, on days I am ill, was deemed unfeasible. The reasoning provided for the denial was based on my ability to perform the essential functions of my role. I would like to respectfully clarify that my request and the ability to perform essential job functions are not mutually exclusive. I believe I am fully capable of meeting the essential duties of my position while working from home intermittently.

It was also noted that my doctor did not specify the frequency or duration of the accommodation. I was genuinely perplexed by this feedback, as those details are not relevant to the nature of the request I submitted. The questions from Section 9 of the ADA Request Form, which addresses frequency and duration, applies specifically to **Leave of Absence as an Accommodation**. As clearly indicated on page 2 of my request form, I was only requesting **Workplace Accommodations** (Not Leave of Absence). Therefore, those particular questions should not have been applicable in evaluating my request.

Furthermore, the suggestion or consideration of FMLA in relation to my request was also inappropriate and not relevant, as my request pertained solely to an accommodation allowing me to work from home, not leave.

EXHIBIT [?] FOLLOW-UP EMAIL/8/17/2025
RE-OPENING REQUES

Even if the information had been deemed relevant, I was not afforded the opportunity to provide clarification or supporting documentation. Instead, my accommodation request was denied outright, without allowing me the chance to address or correct any perceived deficiencies. This step is typically expected as part of a fair, transparent, and interactive process.

I respectfully request that we reopen the interactive process to discuss my accommodation needs in good faith. I remain committed to working collaboratively toward a reasonable accommodation that supports both my health and my ability to fulfill my job responsibilities.

La Vonnya Harrell
Analyst 2, Financial Systems

Kemper Corporate Services

E lharrell2@kemper.com
kemper.com

**KEMPER**

this communication in error, please notify the sender and delete it from your system.

---

## Response By Email (08/14/2025 04:58 PM)

Hi La Vonnya

Please see attached letter regarding your requested WFH accommodation request.

If you have any questions, please let us know.

Thank you.
Kemper HR Services/Lisa

Date Created: 08/14/2025 04:58 PM
Date Last Updated: 09/04/2025 12:21 PM
Status: Resolved

*EXHIBIT I ACCOMMODATION APPROVED)* (handwritten)

August 14, 2025

*Via Email*
La Vonnya Harrell
*lharrell2@kemper.com*

Dear La Vonya:

Kemper HR Services has received your completed ADA Assessment form and subsequent emails related to your medical condition.

We have reviewed your medical status relating to possible limitations on your ability to perform your essential job functions and/or your ability to work with a reasonable accommodation. Upon review of this paperwork, the information received indicates that you have a medical condition(s) that requires you to work from home when you have a flare-up of your condition.

Please note that we generally consider your ability to work in the office and collaborate in person with others on your team to be an essential function of your position. However, after reviewing the information received, we have approved your accommodation to work from home as long as you remain able to perform the essential functions of your job. Your accommodation has been approved as follows: **Ability to work from home on the occasions you have a flare-up of your condition. This accommodation will be in effect until 12/31/2025 at which time you may need to recertify. You will not need to use your Remote Bank on your work-from-home days related to your condition. However, please be sure to email kemperhrservices@kemper.com the dates that you are unable to come into the office due to your medical condition. You should email us on the date you do not come into the office.**

Your condition(s) or restriction(s) may change, business conditions and operations may change, or your experience with the provided accommodation(s) may indicate a need to reconsider or alter the accommodation(s) in some manner. Therefore, an accommodation previously provided to you could be modified, changed, or discontinued at a later date. You are required to inform us of any changes in your condition(s) or restriction(s) that impact the accommodation provided to you.
After working with the accommodation(s) we have agreed to provide, if you feel it is not effective, you should notify me at once and we can continue the interactive process.

If you have any questions, please feel free to contact Kemper HR Services at 800.214.3553 or email kemperhrservices@kemper.com.

Thank you,
Kemper HR Services/Lisa
cc: Sara Ziegler, HR Business Partner
    Kelly Schuck, Senior Manager

**Response By Email** (08/26/2025)

Hi La Vonnya

I wanted to assure you that your 8/15 email is being reviewed with the ADA committee.

You should be receiving a response within the next couple of days.

Thank you.
Kemper HR Services/Lisa

**Customer By Service Email** (08/15/2025 02:16 PM)

Hi Lisa,

I have a few questions for clarity.

I wanted to seek some clarification regarding the statement that "the ability to work in the office and collaborate in person with others on your team" is considered an essential function of my position. Since 40% of my team members are in other states and collaborate remotely on a regular basis, I am hoping to better understand how my in-office presence is essential to my role's responsibilities.

I would like to clarify that my original request included the ability to work from home on days with weather conditions such as rain, extreme cold, or extreme heat. Per my submitted documentation, those conditions tend to exacerbate my condition, i.e. affect my ability to walk. Given our local weather patterns, I want to make it clear that there may be occasions where

I will need to work multiple days from home, due to these conditions. I don't understand how flare-ups became the subject of the request. If I have a flare-up, I simply will exercise my right to use a PTO sick day, for that day, or the subsequent days after. The most important thing is maintaining to avoid a flare-up occurring, hence my request.

I understand it is requested that I email the HR inbox on the day of a flare-up (which again was not the nature of my request) on days that prevent me from coming into the office. It is my understanding that The Hartford's process was to manage the request. I do not understand why I am required to e-mail HR every day when there is something in place to facilitate this. Can you please explain the policy and procedure regarding The Hartford's role in correlation to HR? Also, will my ADA accommodation appear as active on The Hartford website?

Additionally, I would appreciate some clarification regarding the recertification process. I do not see this on the ADA policy. Could you please provide more detailed information or direct me to the policy outlining this process? I am also curious about why I am being required to recertify just a few months after my accommodation was approved, especially since my medical documentation lists my condition as permanent. Is this supposed to be a yearly thing?

Lastly, I understand that accommodation may be subject to change based on evolving circumstances. However, since my condition has been documented as permanent (I've had this condition for 24 years and diagnosed 22 of them), I would like clarification on what circumstances might lead to altering or discontinuing this accommodation. I want to ensure that I remain compliant and proactive in communication, and I would like to understand how stability of my condition factors into this consideration.

---

**La Vonnya Harrell**
Analyst 2, Financial Systems

**Kemper Corporate Services**

E lharrell2@kemper.com
kemper.com

## KEMPER

For information concerning our privacy practices and your privacy rights, please see our *privacy disclosures.*

CONFIDENTIALITY NOTICE: This communication may contain confidential information intended only for the addressee(s). If you received

## Response By Email (09/04/2025 12:21 PM)

Hi LaVonnya

The ADA team met again to discuss your concerns stated below.

We understand that the extreme weather conditions has the potential to cause flare-ups of your medical condition which you are trying to avoid. Therefore we are approving your Work-from-Home accommodation for a period of 6 months. We ask that you email kemperhrservices@kemper.com when you take a WFH day as the Hartford doesn't track this type of accommodation for us. You will not have to use your bank of remote days so you are not limited by the number of days in your bank. You will not need to code your remote time in Workday.

The Hartford is our leave and disability administrator. They will send out the required paperwork for ADA accommodations however they do not make decisions on accommodations that may affect our business. This process is handled internally through HR Services in coordination with Field HR Managers. Your ADA claim will be in the Hartford portal approved for a duration of 6 months.

Regarding your policy question, Kemper complies with the ADA and reviews requests and engages in the interactive process on a case-by-case basis to ensure employee needs are accommodated appropriately, while allowing the business to achieve its stated goals. The beginning of this process is receiving the ADA paperwork submitted by your provider and continues with both the employer and employee participating in good faith to reach an acceptable outcome. The ADA does not require employers to accept unilaterally the accommodation requests submitted by providers. It does, however, require both parties to participate in the interactive process in good faith to reach an acceptable accommodation.

If you have any further questions, please let us know.

Thank you.
Kemper HR Services/Lisa

## Response By Email (08/20/2025 11:36 AM)

Hi La Vonnya

I wanted to assure you that your 8/15 email is being reviewed with the ADA committee.

You should be receiving a response within the next couple of days.

Thank you.

Case: 1:26-cv-04480 Document #: 1 Filed: 04/21/26 Page 25 of 38 PageID #:25

## Re: Harrell, La Vonnya - Accommodation Request [Incident: 250814-000183]

From:   Harrell, La Vonnya (lharrell2@kemper.com)

To:       kemperhrservices@kemper.com

Date:   Thursday, September 4, 2025 at 06:34 PM CDT

Thank you for your response regarding my ADA accommodation request.

However, I would like to follow up as several of the questions and points I originally raised remain either unaddressed or misunderstood. To ensure clarity and alignment moving forward, I am restating the specific areas where I'm still seeking clarification:

My question regarding the requirement that in-person collaboration is an essential function of my role was not addressed.  Since approximately 40% of my team is based in other states and collaborates remotely, I would appreciate clarification on how in-office presence is uniquely essential to my responsibilities.  Especially since one of my teammates just relocated to another state, without an office, and transitioned to solely from home.   Since my request was previously denied on the basis that I could do the "essential functions" of my job, then approved but was stated, "we generally consider your ability to work in the office and collaborate in person with others on your team to be an essential function of your position" makes it seem as if my accommodation is a deviation from my job's essential functions.  This inconsistency undermines transparency in the accommodation process, so I have to anticipate whether or not Kemper might challenge my accommodations later.  This is why I am still seeking clarity.

Keeping in line with transparency and anticipated challenges to my accommodations,  I have not received any information outlining the process or expectations for what occurs at the end of that 6-month period. Without this guidance, I am unable to proactively plan for recertification or continuation of the accommodation. Could you please provide details on the next steps or a timeline after the initial 6-month approval?

While I appreciate the clarification; I only asked for the Hartford policy and the recertification policy.   I don't see how the last paragraph answered anything I inquired about.

From my perspective, the initial handling of my request did not appear to reflect the good faith effort expected during the interactive process.

- I submitted my accommodation request on June 18, 2025, and was informed by The Hartford that it would be forwarded to Kemper within five business days. However, I received no response until July 8, 2025, one day shy of three weeks, after I followed up.

- My request was denied, with reasoning that contradicted the later approval, and it did not ensure my needs were met, even though on paper, I have a disability.

- A comment was made regarding a lack of information from my doctor that did not pertain to me.

- My request has been misrepresented several times.

- I responded to the denial the next day, inviting continued discussion, but received no response. Despite this, my request was marked as closed on The Hartford site just five days after the denial.

- After the case was closed, it took an additional 15 days and a second message from me to receive any reply. Even then, my concerns were not directly addressed; instead, the original decision was reversed.

- The delays, inconsistent communications, and lack of meaningful dialogue demonstrate a failure to engage in the interactive process in good faith as required under the ADA. It took almost two months to get an approval.

I fully understand that the company is not required to automatically approve accommodation requests based solely on a provider's recommendation. However, it doesn't remove the fact that I do have a documented disability, and it was denied. Under the ADA, reasonable accommodations **must** be provided unless they impose an undue hardship. To date, no such hardship has been cited in my case.

I want to reiterate that I remain committed to ensuring that the treatment I receive is equitable, particularly when compared to colleagues who work remotely in other states or who do not face similar physical limitations.

That said, I do not wish to continue engaging on this topic beyond what is necessary to resolve the outstanding two questions above.

---

**La Vonnya Harrell**
Analyst 2, Financial Systems

**Kemper Corporate Services**

E lharrell2@kemper.com
kemper.com

**KEMPER**

For information concerning our privacy practices and your privacy rights, please see our *privacy disclosures*.

CONFIDENTIALITY NOTICE: This communication may contain
confidential information intended only for the addressee(s). If you received
this communication in error, please notify the sender and delete it from your
system.

---

**From:** Kemper HR Services <kemper_hr_services@mailac.custhelp.com>
**Sent:** Thursday, September 4, 2025 12:21 PM
**To:** Harrell, La Vonnya <lharrell2@kemper.com>
**Subject:** Harrell, La Vonnya - Accommodation Request [Incident: 250814-000183]



Recently you requested personal assistance from our on-line
support center. Below is a summary of your request and our

**CAUTION: This email originated from outside of Kemper. Do not click links or open attachments unless you recognize the sender and know the content is safe.**

## Response By Email (10/07/2025 11:57 AM)

Dear La Vonnya:

Thank you for your email and for speaking with Sara last week. We appreciate the opportunity to answer some remaining questions you have and clarify any misunderstandings. As you know, your accommodation request for as-needed remote work when you have flare-ups of your condition has been approved through December 31, 2025. While we cannot guarantee your accommodation after that point, we will continue to engage with you in good faith to assess how your accommodation is working for both you and the business, gather any updated paperwork that may be necessary, discuss whether any other accommodations might be effective, and discuss next steps.

With regard to some of the concerns in your email, we know the accommodation process takes some time. The reality is that the Company is working to meet not just the needs of the individual seeking accommodations, but also the needs of the business. You originally provided paperwork in July 2025, and after engaging in those key discussions, Kemper approved your accommodation on August 14, 2025. Moreover, during the time your request was pending, you were able to use your remote bank of days and work remotely as needed without any disciplinary consequence. Additionally, employees in accounting roles, like yourself, have added flexibility to work remotely during quarterly reporting months, one of which was July while your request was pending, so you had the flexibility of being able to work remotely during the month of July without using any days from your remote bank. Therefore, while your official approval had not been issued yet, you were receiving the accommodation in the interim.

We also want to try to respond to your question related to the essential functions of your job and the importance of onsite work. While many of your actual tasks can be performed through remote work, being able to collaborate in person is an essential function of your job as well. The Company values in-person collaboration, whether that is with your teammates or employees in other areas. Presence in the office provides the opportunity for relationships that cannot be forged by consistently working remotely. This is not inconsistent with allowing employees flexibility to work remotely from time to time. Moreover, because Kemper respects the privacy of all employees, we cannot comment on circumstances impacting individual employees whose work arrangements may be different from yours.

You had some specific questions about the ADA process, the recertification process and the types of accommodations granted. As you know, the ADA interactive process requires collaboration and participation by both the Company and the employee. There is no one size fits all approach, and the Company considers both employee needs and business needs. In general, when an employee needs an accommodation, the first step is to reach out to the Hartford to open an ADA claim. The employee is given 21 days to return the ADA Assessment form completed by their doctor. The Hartford should post this paperwork for Kemper's review, generally within 5 days. Kemper's review begins with the HR Services Specialist and the employee's HR Field Manager. The Field HR Manager will engage in the interactive process, in consultation with both the employee and business, regarding a reasonable accommodation. The employee will receive a notification from HR Services, and if approved, includes the details of the accommodation, and notes how long the accommodation will be in place. The Hartford will send a letter outlining the accommodation as well as another copy of the ADA Assessment form, should the accommodation need to be updated or changed.

If the employee does not contact the Hartford or provide an updated Assessment form, prior to the accommodation ending, the Hartford will send a Claim Closure Notice the day after the accommodation ends. This will also serve as a reminder to engage again with the Hartford if an accommodation is still needed, which follows the process noted above.

You also asked for a written policy for "types of accommodations granted." Although I may not fully understand your question, I will try to respond. There is no written policy for the types of accommodations granted. As this is an interactive process, the types of accommodations granted are determined in the interactive process and designed to balance the specific needs of the employee bringing forward a request with the needs of the business.

As always, Kemper remains committed to a good faith, interactive process and welcomes the opportunity to discuss additional or different accommodations you may need. Please let me know if you have any questions.

Thank you,

Kemper HR Services/Lisa

Date Created: 10/07/2025 11:57 AM
Date Last Updated: 10/13/2025 05:54 PM
Status: Resolved

provided regarding delays in the process feel inconsistent or incomplete. The timeline provided in your response omits key details and, from my perspective, does not reflect a fully collaborative, ongoing interactive process. During the period between my submission and the final approval, I was left with no clear plan in place to support my needs. The use of my limited remote work bank, working from home without consequence, or flexibility during quarterly reporting was never presented to me as an interim measure at the time, only now in hindsight. These item should never be used interim accommodations for ADA.

In fact, since my request was denied on July 22, 2025, any remote work I may have performed during that time was not under any formal accommodation, nor was it explicitly offered. As such, it's difficult to view this as a good-faith interim arrangement.

For accuracy, I would like to clarify the accommodation request timeline:

1. My paperwork was submitted on **June 18, 2025**, not in July. I have confirmation via email and from The Hartford's system.

2. I did not hear from HR until **July 9, 2025**, after I followed up on July 8, this was 15 business days after submission, despite the expectation of a 5-day processing window from the Hartford to Kemper.

3. While there was some discussion on July 9, communication ceased until the denial issued on **July 22, 2025**.

4. I submitted rebuttals on **July 23 and August 7**, and the case was closed on **July 28**, with no clear communication that the interactive process was ongoing until a reversal was issued on **August 14, 2025**.

This means the process took nearly **two full months** to conclude.

Regarding your comments on essential job functions and the value of in-person collaboration, I understand the company's emphasis on team interaction. However, my concern centers on **how this reasoning is being applied**. While I wasn't asking for full-time remote work, the suggestion that collaboration is an essential job function, without a clear explanation of how this standard is applied consistently across the organization, raises concerns about fairness and potential bias. When I asked about this, I did not seek private details about other employees; my question was about **equal application of policy**, not individual circumstances. Citing collaboration as essential while declining to explain how it is enforced equitably creates ambiguity, especially when that same justification could be used to deny future accommodations.

I want to clarify that I did not request an explanation of the overall ADA process or types of accommodations generally granted.

Finally, as this is my second time navigating this process, I am already familiar with it.   My inquiry was specific:

- What is the recertification timeframe for my accommodation?
    - It is only mentioned what happens if it is not received but doesn't clearly outline the steps or timeline I should follow.
    - However, how will they know to send a Claim Closure Notice if it is already closed in their system?
    - There are no clear instructions on:
        - When exactly you're expected to submit updated documentation (how far in advance?)
        - Whether you'll receive a notice before your accommodation expires.  It seems like I can't get a notice because it is closed already so where does the notice come from?
        - Who initiates the recertification and is it entirely on the employee?
        - What happens if your doctor needs more time?

- How is fairness ensured in the application of remote work policies, particularly in cases involving disability?

I look forward to your clarification on these points and appreciate your continued engagement.

---

**La Vonnya Harrell**
Analyst 2, Financial Systems

**Kemper Corporate Services**

**E** lharrell2@kemper.com
kemper.com

# KEMPER

For information concerning our privacy practices and your privacy rights, please see our *privacy disclosures*.

CONFIDENTIALITY NOTICE: This communication may contain confidential information intended only for the addressee(s). If you received this communication in error. please notify the sender and delete it from your system.

EXHIBIT K - FINAL ACCOMMODATION CONFIRMATION 10/13/2025

oo Mail - Fw: Harrell, La Vonnya - ADA Accommodation [Incident: 251007-000103]

## Harrell, La Vonnya - ADA Accommodation

1/3/26, 4:27 AM

Response By Email (10/13/2025 05:54 PM)
La Vonnya

As we had previously communicated, the correct date for the approval or your accommodation is through March 4, 2026. We apologize for the confusion.

We are not going to re-address points already discussed; however, I will address your specific questions related to recertification, which generally follows the same process previously outlined for you. If you believe an accommodation will continue to be required, it is up to you to seek recertification. Based on the timing of the process, you may want to submit your updated paperwork to the Hartford 2-3 weeks prior to your accommodation expiring. However, you will receive a notice from the Hartford when your accommodation expires. If your doctor requires more time to submit paperwork, you can request an extension of time.

Thank you.
Kemper HR Services/Lisa

EXHIBIT-L     RIF/TERMINATION NOTICE 10/22/2025

**TO:**      **Employees Selected for Employment Termination Program**

**FROM:**      **Human Resources**

**DATE:**      **October 22, 2025**

**RE:**      **Attached Information on Severance Benefit Eligibility**

You and other employees selected for this employment termination program are eligible to receive certain severance benefits from Kemper (the Company) as described in the General Release (Release) that the Company has given you to consider. Kemper's severance plan is one week of pay for each year of service completed, up to a maximum of 26 weeks of pay, subject to a minimum of 2 weeks of pay if you are in pay grade 27 or below, or a minimum of 8 Weeks of Pay if you are in pay grade 28 or above, pursuant to the Kemper Corporation Employee General Severance Pay Plan.

To receive the benefits described you have at least 45 days from the date you receive the Release and this disclosure to sign and return the Release but you may not sign it before your termination date. You must return it to **Debbie Sullivan** at **3400 North Central Expwy., Suite 300, Richardson, TX 75080** via email at **dsullivan@kemper.com** or via DocuSign. Employees eligible for the employment termination program have been given at least 45 days to consider whether to sign the Release and 7 days to revoke. If eligible employees do not receive the documents on the date indicated above, eligible employees have 45 days from the date the Release and this disclosure is received to return a signed copy of the Release.

This employment termination program is applicable to employees working in the Kemper P&C department, Legal Services, Finance/Accounting, Corporate Investments, Information Systems, Kemper Auto, and Kemper Life (Decisional Unit) selected for termination based on business needs, job elimination, performance, job skills and/or tenure. The Company is providing you and other eligible employees with information showing the number of employees in the Decisional Unit who are eligible and ineligible for the benefits described in the Release, by age and job title. Employees in the Decisional Unit are "eligible" for the employment termination program because the Company selected them for termination and because they are eligible for offered exit benefits. Employees in the Decisional Unit listed as "ineligible" are ineligible either because they will not be terminated, or because they are not eligible otherwise for the benefits of this program. Footnotes, if any, indicate the reason an employee may not be otherwise eligible for the benefits of this program as well as other information. The Company is providing information to you regarding the class, unit, or group considered in the selection decision for the employment termination program applicable to you, as well as information regarding other classes, units, or groups similarly evaluated by comparable or higher levels of management.

The attached chart was prepared as of October 22, 2025. This information is subject to change and may be affected by future employment decisions. If you have any questions about this information, or if you wish to receive more up-to-date information in the future, contact Kathy Peters at kpeters@kemper,com.

Cc:
Kemper Corporation
200 E RANDOLPH ST FL 33
CHICAGO, IL 60601

Kemper Services
Kemper-Corporation-Chicago
2201 4th Avenue North
Birmingham, AL 35203

Please retain this Notice for your records.

EXHIBIT "M" RELEVANT REMOTE WORK POLICY
9/18/2024

**From:** Kemper Communications - Enterprise <kempercomenterprise@kemper.com>
**Sent:** Wednesday, September 18, 2024 10:04 AM
**To:** Harrell, La Vonnya <lharrell2@kemper.com>
**Subject:** Message from Joe Lacher: Announcing Our New Hybrid Workplace Model



KEMPER                                    A Message from Joe Lacher
                                                        President and CEO

All Kemper Employees:

As previously announced, in order to continue building on our success and unlock new opportunities for growth, we are evolving our workplace model to better support our future goals and position Kemper for long-term success.

Over the past few years, we've gained valuable insights from our hybrid work arrangements. While remote work has been effective in many ways, we've also recognized that something vital is missing. When we come together in person, we benefit from spontaneous learning, faster problem solving, and stronger relationship building. These organic interactions help shape our culture and drive higher levels of achievement. We are confident that increasing our in-office presence—while still embracing the flexibility of remote work—is critical to unlock our full potential. This balanced approach will not only help Kemper stay competitive, achieve our goals, and strengthen our position in the marketplace, but also foster deeper employee development and success.

**Our New Hybrid Approach**
Starting January 2, 2025, employees working near a Kemper office, except some designated roles, which by their intrinsic nature are necessarily not office-based (for example appraisers and field sales personnel) will be in the office with the optionality to utilize a bank of 65 remote working days throughout the year. Your manager will have further details on how this applies to your role. This approach generates meaningful in-person

interactions that drive creativity, collaboration, teamwork, and problem-solving while also providing for remote working that offers the flexibility we appreciate is important for all of us.

## The Importance of In-Office Presence

While we've proven that we can be productive working remotely, we also recognize that being together in the office enhances our ability to innovate, collaborate and solve problems as a team. These in-person interactions are key to driving our business forward, achieving our shared goals, and providing fulsome employee growth and development opportunities. To reach the next level of growth and success, we need to evolve our workplace model, combining the strengths of both in-office and remote work.

## Specific Plans and Details Coming Soon

Your leaders will follow up with more specific details regarding how this change will be implemented with your teams within the next two weeks. Additional details about how the new model will work will be provided during the transition period. For questions specific to your individual situation, consult your manager or HRBP.

Our **Strategic Intent** is clear in driving our purpose, and our strength lies in our proven ability to deliver on our promises. Thank you for your continued dedication and commitment to Kemper. Together, through this commitment to evolving our workplace, we will build a stronger, more connected, and more adaptable organization.

EXHIBIT N - TIMELINE

**Timeline**

# June 18, 2025 — ADA Accommodation Request Submitted

Plaintiff submitted an ADA accommodation request through The Hartford seeking intermittent work-from-home during severe weather conditions causing physical discomfort and stiffness.

# June 18 – July 7, 2025 — No Employer Response

Plaintiff was informed that The Hartford typically forwards requests within approximately five business days. No interactive process engagement occurred during this period.

# July 7, 2025 — Initial HR Follow-Up

Plaintiff contacted HR requesting an update on the accommodation request. HR advised that the internal review team meets on a weekly basis.

# July 8, 2025 — HR Request for Medical Clarification

HR requested additional information regarding mobility limitations and assistive devices referenced in medical documentation.

# July 9, 2025 — Plaintiff Clarification Provided

Plaintiff clarified that:

- Work-from-home request was intermittent
- Symptoms were primarily triggered by severe weather conditions
- Use of a cane was optional and not permanent
- Job duties could be performed remotely
  Plaintiff also noted that the role was originally remote and that a portion of the team worked remotely, including employees located in other states.

# July 22, 2025 — ADA Accommodation Denial Issued

Employer denied the accommodation request, stating:

- Plaintiff could perform essential job functions and therefore did not require ADA accommodation as submitted
- Medical documentation lacked sufficient frequency and duration detail
- Remote Work Days and FMLA were referenced as alternatives

# July 23, 2025 — Plaintiff Rebuttal Submitted

Plaintiff responded that:

- Ability to perform essential job functions does not exclude eligibility for ADA accommodation
- Remote Work Days and FMLA are not substitutes for ADA accommodations

# July 28, 2025 — Case Closed by The Hartford

The Hartford closed the accommodation request as denied. No response was provided to Plaintiff's rebuttal prior to closure.

# August 7, 2025 — Follow-Up and Request to Reopen

Plaintiff requested reconsideration of the denial and reopening of the accommodation process. HR indicated the matter was under review and cited staff availability and scheduling constraints.

# August 14, 2025 — Accommodation Approved

Employer approved a modified accommodation allowing work-from-home during flare-ups, effective through December 31, 2025. No recertification procedure was provided at that time.

Employer also noted in communications that in-office collaboration was considered an essential function of the role.

# August 14 – September 4, 2025 — Clarification Period

Plaintiff requested clarification regarding:

- Definition of essential in-office functions
- Differences between weather-based and flare-up-based accommodations
- Recertification procedures
- Administrative handling between HR and The Hartford

